**Mrs. Anna Belle SIMPSON**

v.

**Caspar W. WEINBERGER, Secretary of Health, Education and Welfare.**

**Civ. A. No. 8063.**

United States District Court,
E. D. Tennessee, N. D.

June 5, 1973.

R. Franklin Norton, Ritchie & Norton, Knoxville, Tenn., A. Benjamin Strand, Jr., Dandridge, Tenn., for plaintiff.

John L. Bowers, Jr., U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This is an action commenced pursuant to Title 42 U.S.C. § 405(g) to review the final determination of the Secretary of Health, Education and Welfare denying plaintiff disabled widow's benefits.

Title 42 U.S.C. § 423(d)(2)(B) defines the term "disability" as it applies to widows. This section provides that

"A widow, surviving divorced wife, or widower shall not be determined to be under a disability (for purposes of section 202(e) or (f) of this title) unless his or her physical or mental impairment or impairments are of a level of severity which under regulations

prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity."

Section 223(d)(3) continues:

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

The standard of disability with regard to disabled widows is stricter than that applied to ordinary workers. Section 423 requires that an individual be unable to engage in any substantial gainful activity, whereas, under Section 423(d)(2)(B) an individual must be unable to engage in any gainful activity. Henry v. Richardson, D. C., 320 F.Supp. 296 (1970).

Additionally, pursuant to Section 423(d)(2)(B), the Secretary had adopted regulations regarding widow's benefits which require that a claimant meet certain standards. Appendix to subpart "P" of the regulations, 20 C.F.R. § 404.-1501 et seq., lists the impairments and requires that an individual's impairments be the medical equivalent of those set out. Hendrix v. Finch, D.C., 310 F.Supp. 513 (1970).

The record in this case discloses that plaintiff first filed an application on May 26, 1969. This application was denied on December 22, 1969 and her request for reconsideration affirmed the denial. Plaintiff thereafter requested a hearing which was held on November 5, 1970. The Examiner in a decision dated December 10, 1970, affirmed the previous determination and on February 25, 1971 the Appeals Council sustained the Examiner's decision.

On March 22, 1971, the plaintiff filed the present application. The Secretary denied the application, and plaintiff again requested a hearing. The second examiner, as well as the Appeals Coun-

cil, affirmed the original decision and plaintiff commenced this suit for review.

Plaintiff alleges disability due to cataracts, arthritis, and diabetes. From May 13 to May 19, 1968, plaintiff was hospitalized at Community Hospital, Anderson, Indiana, for removal of a mature left cataract.

Doctor Van Ness, a general practitioner, reported to the Social Security Administration that plaintiff had been a diabetic for ten years. He also noted that she suffers from chronic colitis. The combination of these two disorders, he felt, has "deteriorated to the point that she is going to have to quit any gainful occupation." This physical examination disclosed a blood pressure of 180/76. Heart rate was 96 with occasional extra systoles and dropped beats. There was a marked stiffness and pain on movement and a generalized muscle soreness. Dr. Van Ness diagnosed diabetes, mellitus, chronic and advanced; arteriosclerosis with hypertension, severe; cataracts removed in 1966 and 1968.

Plaintiff was examined by Dr. Boberg, an internist, on August 22, 1969, at the request of the Indiana Vocational Rehabilitation Division. The physical examination by Dr. Boberg showed that plaintiff was

". . . a well developed, well nourished, obese white female who does not appear to be acutely ill at the present time. Vital Signs: Her height is 63 inches, weight 177¼ pounds, pulse is 88 per minute and regular. Blood pressure 148/54 in the right arm recumbant; 144/60 in the left arm recumbant. Head is normocephalic, no evidence of trauma or tumor masses. Ears: Both external auditory canals and tympanic membranes were clear bilaterally, without any evidence of any infection. Eyes: The patient has bilateral iridectomies and also bilateral aphakias. All the extra ocular movements appeared to be intact. Sclerae were clear. Both pupils were irregular. On funduscop-

ic examination the patient has arteriolar narrowing but there were no hemorrhages or exudates seen. The patient has questionable micro aneurysms. Nose: Both nasal canals were patent bilaterally without any obstruction or bleeding points being seen. Mouth and Throat: Patient is completely edentulous, replaced with a full set of dentures. No buccal cavity lesions were seen. Throat clear of any acute infection. Tongue was well papillated and in the mid-line. Neck is supple. Carotid arteries were present and equal bilaterally without any bruits. Thyroid gland normal. Back: The patient seemed to have tenderness over the cervical vertebra and also the upper thoracic area. No CVA tenderness. Chest was clear to percussion and auscultation, no rales, rhonchi or any wheezing were heard. Heart was borderline enlarged to percussion. A regular sinus rhythm at 88 beats per minute. No heaves or thrills were palpated. No murmurs or friction rubs were heard. The breasts were soft, non-tender without any masses. Abdomen: Patient seemed to have generalized abdominal tenderness with only a slight amount of palpation. Normoactive bowel sounds. No masses were palpable. Liver, spleen and kidneys were not palpable. Patient has a well healed surgical scar in the epigastric area, also a well healed right paramedian surgical scar. Pelvic Examination: Patient has a considerable amount of scarring of the introitus. The speculum could not be inserted without causing the patient a considerable amount of pain. There is no uterus palpated, no unusual adnexal masses or tenderness. Patient also has a considerable amount of scarring on the rectal orifice. There were no rectal masses or tenderness noted.

"Extremities: Patient able to move all the extremities with a full range of motion. There is no edema. The patient has good pedal pulses and peripheral pulses. No clubbing or cyanosis. There is no redness or undue tenderness. No increase in temperature in any of the joints. There is no swelling of any of the joints and there seems to be a normal range of motion. Neurological Examination: Deep tendon reflexes were hypoactive in the lower extremities but were equal bilaterally, they were present and equal bilaterally in the upper extremities. No pathological reflexes were obtained. Cranial nerves were grossly intact.

"Chest x-ray was interpreted by Doctor Lintner Clark, Roentgenologist, and is as follows: 'A PA view of the chest is negative. Cardiac-thoracic ratio 133 mm. over 275 mm.'

"Laboratory Studies: Urinalysis revealed the specific gravity of 1.016, negative for albumin and sugar. Patient had 4+ white blood cells and only a rare red blood cell. Complete blood count showed a hemoglobin of 13.5 grams, hematocrit 42%, white blood cell count was 10,050 with 58 polys, 37 lymphocytes, 2 monocytes, 3 eosinophils and 1 band form. The chem 12 was completely normal with the exception that the total protein was elevated to 8.4, otherwise completely normal. Electrocartiogram showed an abnormal left axis deviation, otherwise within normal limits."

Doctor Boberg's impressions were diabetes mellitus by history, hypertension by history with questionable hypertensive cardiovascular disease, functional overlay, and bilateral iridectomies and bilateral aphakias. He concluded that he did not

". . . feel that this patient is totally disabled and unable to work at the present time. Her diabetes seems to be fairly well controlled on her present insulin therapy program. Her hypertension is easily controlled at the present time. I do not feel that she has any significant organic heart disease."

On March 31, 1970, Dr. Samuel Thompson, an ophthamologist, reported that plaintiff was fitted with bilateral

aphakic lenses which provided 20/25 and 20/50 visual acuity in the right and left eyes, respectively. Dr. Thompson commented:

". . . My impression is that this individual has a satisfactory result following bilateral cataract surgery, but that she is keenly aware of the optical disadvantages present in the peripheral vision of all aphakic glasses. I believe that her complaints are perhaps magnified by her emotional nature which perhaps is more important than any eye problem which exists. Her vision is too good to qualify her for legal blindness and I would not declare her legally blind on the basis of her visual fields as the latter shows only evidence of emotional responses of limited diagnostic value. No further return to this office has been scheduled."

On April 3, 1971, Dr. Ellis, a general surgeon, reported that plaintiff seemed depressed and her overall health appeared poor. He diagnosed obesity, diabetes mellitus under poor control, and anxiety depression. On April 17, 1972, he supplemented his earlier report with another diagnosis concluding plaintiff had bilateral cataracts; brittle diabetes mellitus (on regular insulin and also protomide zinc); arterioschlerotic heart disease.

At the hearing, plaintiff was represented by her sister, Myrtle Malone. She stated that plaintiff lived alone in New Market, Tennessee. Plaintiff was born on July 17, 1913. Her sister testified that plaintiff does some housework and spends part of her time waiting on herself or writing or reading, or listening to the television.

■ The question for determination is whether there is substantial evidence in the record to support the decision of the Secretary that plaintiff is not entitled to benefits under Title 42 U.S.C. § 402(d), as a disabled widow within the meaning of Section 423(d)(2)(B). We conclude that there is substantial evidence in the record that plaintiff's impairments do not meet the level of severity required for disabled widow's benefits.

Plaintiff argues that she satisfies the requirements of § 404.1506 appendix P, Section 9.08 which provides:

"9.08 Diabetes Mellitus—B. Diabetes with one of the following (not covered under existing body system listing);

"1. Neuropathy with moderate motor deficit in two extremities; or

"2. Acidosis occurring at least on the average of once every two months, documented by appropriate blood chemical tests (pH or pCO$_2$ or bicarbonate levels); or

"3. Amputation at, or above, the tarsal region due to diabetic necrosis or peripheral vascular disease;

"4. Ophthalmologic findings of:

"a. Retinitis proliferans; or

"b. Rubeosis iridis; or

"c. Venous distention and capillary pattern distortion with hemorrhages or exudates."

She also contends that the Examiner should only have considered the evidence of Dr. Ellis and Mrs. Malone since this was the only evidence presented at the second hearing. Further, that viewing the record with this testimony alone there is no evidence to support the Secretary's decision.

None of the specialists who examined Mrs. Simpson expressed the opinion or forward medical evidence sufficient to sustain a finding of disability except for Dr. Ellis. The Examiner was supported by the substantial weight of the evidence in resolving the issue contrary to Dr. Ellis' opinion, and finding that plaintiff had not met the requirements set forth in § 404.1506, appendix P.

■ Plaintiff's second argument that the Examiner should have ignored the previous medical evidence is also without merit. This was plaintiff's second application for benefits. It was filed within a few months of the original denial. The medical evidence itself was recent and presented a complete view of

plaintiff's medical history. The Examiner was free to evaluate this evidence along with the evidence submitted by plaintiff's physician, Dr. Ellis.

Accordingly, it is ordered that plaintiff's motion for summary judgment be, and the same hereby is, denied. Further, it is ordered that defendant's motion for summary judgment be, and the same hereby is, granted.